IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| ROBERT LYSLE ROSE, | ) | Cause No. 04-CV-52-M-DWM-JCL |
| | ) | |
| Plaintiff, | ) | ORDER AND FINDINGS AND |
| | ) | RECOMMENDATION OF |
| vs. | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| EARL STRUBECK AND JOHN HODGE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

This matter is before the Court on Defendants' Motion for
Summary Judgment (Document 74) and Plaintiff's Motion to Strike
Affidavits and Parts of Defendants' Argument (Document 88).

I. **MOTION TO STRIKE**

Plaintiff argues in his response brief that the affidavits
filed in support of Defendants' Motion for Summary Judgment
should be stricken because the information contained therein
should have been provided to Plaintiff in response to his
discovery requests.  (Document 88, p. 1).

The Court has reviewed the discovery responses submitted by
Plaintiff (Document 89-Voluminous Exhibit 11)[1] and does not find
that Defendants were obligated to provide Plaintiff with the

_____

[1]Voluminous exhibits have not been scanned onto CMECF and
are only available in the paper form.

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

information contained in their affidavits in response to Plaintiff's discovery requests. Plaintiff does not specifically point to the discovery which he contends was insufficiently answered. Plaintiff asked Defendants to identify witnesses in the case and to that end, Defendants identified all of the individuals who provided sworn testimony in support of the Motion for Summary Judgment. Plaintiff did not ask the substance of the knowledge of each witness or the facts to which they would testify. Accordingly, Plaintiff's motion will be denied.

II. <u>BACKGROUND</u>

On November 8, 1995, Plaintiff was convicted of aggravated assault and four counts of assault. For these crimes he was sentenced to twenty years in the Montana State Prison with ten years suspended. Upon his release from prison, Plaintiff was to make restitution in an amount to be determined by his parole officer. (Document 89-Voluminous Exhibit 4).

On November 5, 2000, Plaintiff was released from the Montana State Prison. Sometime prior to his release, Plaintiff was asked to sign a form setting forth "Conditions of Probation and Parole." Plaintiff disputed signing this document and provided his sentence and judgment to prison officials in support of his claim that he was not subject to probation conditions. He was told that if he did not fill out the form, he would be arrested upon leaving the prison. (Document 89-Voluminous Exhibit

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

12-Plaintiff's Deposition, pp. 98-100).  Accordingly, Plaintiff

initialed the general conditions one through eight, the special

condition to pay court ordered restitution, the condition to

abide by all court orders and signed the bottom of the form.

(Document 75-Voluminous Exhibit C, Deposition Exhibit 9).

    Plaintiff was released from Montana State Prison on November

5, 2000.  Pursuant to the probation form and his travel permit

(Document 75-Voluminous Exhibit C, Deposition Exhibit 10),

Plaintiff reported to Officer Jo Beth Vines at the Hamilton

Probation and Parole Office on November 6, 2000.[2]

    Ms. Vines' declaration indicates that during her November 6,

2000 meeting with Plaintiff she reviewed the standard form

prepared by the institutional probation and parole officers at

Montana State Prison.  She then determined that Mr. Rose should

also be signed up to "special" conditions one through four

pending his meeting with Mr. Hodge scheduled for November 13,

2000.  Ms. Vines testified that she advised Plaintiff to discuss

any questions he had about his conditions with Mr. Hodge.  She

stated that in Plaintiff's presence she checked boxes one through

four with an "x" on the standard form, placed her initials above

---

[2]Plaintiff testified in his deposition that he could not
remember who he met with on November 6, 2000, that it could have
been Jo Beth Vines or the desk secretary.  However, Ms. Vines
verifies in her declaration (Document 70), that she met briefly
with Plaintiff on November 6, 2000.

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

and to the right of box No. 1 to indicate that she had informed Plaintiff of the additional conditions, and placed the form in Plaintiff's file.  (Document 70-Vines Declaration).  Noticeably, Ms. Vines did not testify that she had Plaintiff initial these conditions.

Plaintiff disputes that the person he met with on November 6, 2000 checked the boxes indicating additional conditions in his presence.  He testified that it was a short meeting where he was simply told that Mr. Hodge, who was on vacation, was going to be his supervising probation officer.  Plaintiff was given a blue appointment paper setting a November 13, 2000 appointment with Mr. Hodge. (Document 89-Voluminous Exhibit 12-Plaintiff's Deposition, pp. 108-109, 120, 122).  Plaintiff contends that his initials were forged on the Conditions of Probation and Parole form. (Document 75-Voluminous Exhibit C-Deposition Exhibit 11). Plaintiff asserts that at no time during this meeting or in subsequent meetings with Vines or Defendant Hodge did he sign his initials to the standard form's special conditions 1-4. (Document 89-Voluminous Exhibit 12-Plaintiff's Deposition, pp. 111, 114).

Plaintiff met with Defendant Hodge on November 13, 2000. Defendant Hodge testified that he went over each of the conditions of probation with Plaintiff. (Document 75-1-Voluminous Exhibit J-August 24, 2001 hearing transcript, p. 96).  Plaintiff

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

disputes this but agrees that Defendant Hodge informed him that he was on strict supervision.  (Document 89-2: Plaintiff's Affidavit, ¶ 18).

On May 19, 2001, Plaintiff was arrested by Defendant Hodge at a bar in Hamilton for violating conditions of probation. Plaintiff took a breathalyzer test which came up negative for alcohol, but Plaintiff's urine sample taken that day tested positive for methamphetamine.  As a result, Plaintiff was charged with possession of dangerous drugs.  (Document 75-Voluminous Exhibit C, Ravalli County Sheriff's Office 5/19/00 Incident Report).[3]

After this arrest, an article appeared in the Ravalli Republic which stated that Plaintiff had been arrested and charged with possession of an illegal drug or substance and "something about a UA."

On June 5, 2001, Beaverhead County Attorney Tom Scott filed a Motion for Revocation of Suspended Imposition of Sentence and a Summons to Appear.  Prior to this filing, Mr. Scott reviewed Judge Davis' sentencing order, the May 23, 2001 Report of Violation and the attachments thereto.  Based upon this

---

[3]The Court notes that Defendants have failed to comply with Local Rule 7.2 which requires that if exhibits contain more than one page, each page of the exhibit must be numbered.  This makes it extremely difficult, if not impossible, to precisely cite to the appropriate exhibits.

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

information, Mr. Scott concluded there was ample probable cause to move to revoke Plaintiff's probation.  (Document 73–Affidavit of Tom Scott).

Having been released from custody after his arrest on May 19, 2001, Plaintiff was again arrested in Helena on July 14, 2001, for violating the open container ordinance for possessing an open beer, for obstructing a police officer and for probation violations. (Document 75–Voluminous Exhibit C–Helena Police Department Report Narrative, Deposition Exhibit 15, p. 2).

Based upon this conduct, Defendant Hodge on July 27, 2001 filed an Addendum to the May 23, 2001 Report of Violation alleging that Plaintiff had violated his conditions of probation. (Document 75-1--Voluminous Exhibit C–Deposition Exhibit 17).

On August 3, 2001, Tom Scott filed a Supplemental Motion for Revocation of Suspended Sentence.  Prior to filing this motion, Mr. Scott reviewed Judge Davis' sentencing order, the May 23, 2001 Report of Violation and the July 27, 2001 Addendum.

On August 24, 2001, a hearing was held on the motion to revoke. (Document 75–Voluminous Exhibit F).  On November 2, 2001, the Fifth Judicial District Court for Beaverhead County issued an Order denying the revocation petition and finding that the oral pronouncement of sentence by the district court governs and the only condition on Plaintiff's suspended sentence was that he pay restitution.

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6

## III. <u>STANDARD OF REVIEW</u>

A party is entitled to summary judgment if that party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. <u>Id</u>. Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

preclude entry of summary judgment.  <u>Anderson</u>, 477 U.S. at 248.

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. However, if the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  <u>Id</u>. at 249-50.

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

<u>Id</u>. at 252.

In civil rights cases and in the context of a motion for summary judgment where a litigant is proceeding *pro se*, the court has an obligation to construe the pleadings liberally and to afford the *pro se* litigant the benefit of any doubt.  <u>Baker v. McNeil Island Corrections Ctr.</u>, 859 F.2d 124, 127 (9th Cir. 1988).

## IV. <u>PLAINTIFF'S ALLEGATIONS</u>

The Court has grouped and will consider Plaintiff's claims as follows:

(A) that Plaintiff was improperly subjected to probation conditions which led to the unlawful search and seizure of his person (in violation of the Fourth Amendment to the United States

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

Constitution) and which impinged upon Plaintiff's right to associate and travel (in violation of the First Amendment to the United States Constitution) (Document 8-Claims 1-5);

(B) that Defendants maliciously prosecuted Plaintiff in violation of state and federal law (Document 8-Claim 6);

(C)  that Plaintiff suffered a general due process violation because he was given no opportunity for pre-deprivation process; (Document 8-Claim 9);

(D)  that Plaintiff was defamed under state law because his arrest was published in the local newspaper and caused him to lose business (Document 8-Claim 3); and

(E) that Defendants caused intentional infliction of emotional distress because their actions and knowledge that such actions were causing Plaintiff emotional distress from "lost job opportunities, contacts and just about all [he] owned." (Document 8-Claim 7).

## V. __ANALYSIS__

Defendants argue they are entitled to summary judgment because they were not involved in the imposition of probationary conditions on Plaintiff and even if they did they are protected by quasi-judicial immunity and/or qualified immunity.

The Court will first examine whether a constitutional violation has occurred.  See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (the absence of a

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

constitutional violation obviates the need to analyze the
immunity defense).

### A.   Improper Probation Conditions

Plaintiff specifically asserts a First and Fourth Amendment
violation, as well as a "general denial of civil rights" for the
unlawful denial of Plaintiff's right to associate and travel and
his allegedly unlawful search and seizure.  A state district
court has found that Plaintiff was improperly placed under
probation conditions.  Judge Tucker's Order dismissing the
State's Petition to Revoke Plaintiff's suspended sentence clearly
held that the original sentencing court had "simply and utterly
failed to describe any other condition required of Defendant"
besides restitution and that the "Supreme Court has refused to
allow conditions to be attached which were not articulated at the
time of sentence."  (Document 75-Voluminous Exhibit I).  As there
were no conditions articulated by the court which sentenced
Plaintiff, aside from his obligation to pay restitution, there
were no authorized conditions of probation applicable to
Plaintiff's suspended sentence of ten years imprisonment.

Despite the state district court's determination to the
contrary, Defendants continue to assert that there was direct
legal authority permitting probation officers to impose
conditions of probation upon the Plaintiff in relation to the
period of the suspended sentence.  Defendants rely first on

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

Mont. Code. Ann. § 48-18-201(7) (1999), which states "[i]f a felony sentence includes probation, the department of corrections shall supervise the offender unless the court specifies otherwise."  However, this statute does not give probation officers the right to impose conditions of probation.  Further, Defendants provide no authority for the contention that supervision should be synonymous with authority to impose probation conditions.

Montana statutory and constitutional law unequivocally provides that sentencing restrictions on constitutional and civil rights must be imposed by the sentencing court.  Mont. Code Ann. § 46-18-801(1); State v. Field, 302 Mont. 62, 11 P.3d 1203 (October 18, 2000); U.S. v. Brooks, 270 Mont. 136, 890 P.2d 759 (1995).  Specifically, the Montana Supreme Court held in a case decided just eight months prior to Plaintiff's original sentencing that Mont. Code Ann. § 46-18-801 explicitly required the sentencing judge to specifically enumerate probation conditions affecting civil or constitutional rights.  Brooks, 270 Mont. at 140, 890 P.2d at 762.

Mont. Code Ann. § 46-23-1011(1) (2001) provides that the "department shall supervise probationers during their probation period in accord with the conditions set by a sentencing judge" and "[i]f the sentencing judge did not set conditions of probation at the time of sentencing, the court shall, at the

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11

request of the department, hold a hearing and set conditions of probation." (emphasis added).  Finally, the "probation and parole officer <u>may recommend</u> and a judge may modify or add any condition of probation or suspension of sentence at any time."  <u>Id.</u> § 46-23-1011(4)(a) (emphasis added).  Taken together, it is clear that while supervision is within the purview of probation officers, the imposition of probation conditions lies solely with the sentencing court.

Defendants also argue that A.R.M. 20.7.1011 gives probation officers the direct authority to impose conditions of probation. A.R.M. § 20.7.1011(9) titled "Special Conditions" states,

> The Montana board of pardons, the sentencing court, or the department of corrections and human services may require other and additional conditions to be placed upon the probationer or parolee.  The conditions shall be in writing by the agency involved and shall be made a part of any agreement signed by the probationer/parolee.

However, where an agency's rules are inconsistent and in conflict with a statute, the administrative regulations are held to be invalid.  <u>See, e.g.,</u> Mont. Code Ann. § 2-4-305(6)(a); <u>Safeway, Inc. v. Montana Petroleum Release Comp. Bd.</u>, 281 Mont. 189, 194 (1997).  The Montana Code does not grant the Department of Corrections the power to modify a sentence by imposing subsequent conditions.  It specifically grants this power to the sentencing judge and board of pardons and parole.  <u>See</u> Mont. Code Ann. §§ 46-23-1011(1), 1021(1); <u>Montana v. Field</u>, 302 Mont. 62,

66 (2000).  By granting this role to the Department of
Corrections, the administrative rule "engrafts additional and
contradictory requirements on the statute."  It therefore appears
to be invalid.  <u>Bell v. Dept. of Licensing</u>, 182 Mont. 21, 23
(1979).  At the very least, it is not sufficient authority to
convince this Court that Defendants had authority to impose
probation conditions upon Plaintiff.

There being no authority provided under Plaintiff's sentence
or under state law for a probation officer to impose the
conditions of probation such as were imposed on Plaintiff, this
Court agrees with the state district court that Plaintiff was
improperly placed under conditions of probation with respect to
the period of Plaintiff's suspended sentence.  The Court turns to
examine whether the named Defendants are entitled to summary
judgment upon the claims advanced against them by the Plaintiff.

### 1. Defendant Strubeck

Liability under § 1983 is grounded in personal involvement
with the violation and not in the doctrine of *respondent superior*
or vicarious liability.  <u>See</u> <u>Hansen v. Black</u>, 885 F.2d 642, 645-
46 (9th Cir. 1989).  In his capacity as a supervisor of Defendant
Hodge and Vines, Defendant Strubeck is "only liable for
constitutional violations of his subordinates if [he]
participated in or directed the violations, or knew of the
violations and failed to act to prevent them."  <u>Taylor v. List</u>,

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 13

880 F.2d 1040, 1045 (9th Cir. 1989).  Defendant Strubeck
testified by affidavit that he did not sign Plaintiff to the
conditions of probation and did not order anyone else to do so.
He maintains that he did not know who imposed the conditions of
probation until the November 2, 2001 judgment dismissing the
motions for revocation. (Document 71–Affidavit of Earl Strubeck).

The facts Plaintiff offers to show a genuine issue of
material fact relating to Defendant Strubeck's involvement in
either the imposition of probationary conditions and/or the
arrest and revocation are insufficient to overcome the necessary
burden.  Simply stating that Defendant Strubeck told Defendant
Hodge he wanted Plaintiff's probation revoked indefinitely or
that Defendant Strubeck was present at a couple of Plaintiff's
meetings with Defendant Hodge (Document 89-2--Plaintiff's
Affidavit, ¶ 30) is not enough to show Strubeck's personal
participation in the alleged constitutional violations.

Further, Plaintiff's mother's testimony that she was told by
Defendant Hodge to call Defendant Strubeck regarding her son's
probation does not establish that Defendant Strubeck was involved
in the improper imposition of Plaintiff's probation conditions.
(Document 89–Voluminous Exhibit 1).

Giving no more facts than a mere suggestion of possible
involvement does not suffice to overcome the burden of
establishing a genuine issue of material fact.  Boram v. Bogan,

320 F.3d 1023, 1033 (9th Cir. 2003).  No reasonable jury would find that Defendant Strubeck engaged in sufficient conduct to be liable under a § 1983 complaint.  See, e.g., Anderson, 477 U.S. at 248.  Therefore, Defendant Strubeck should be dismissed.

### 2.  Defendant Hodge

The Court sees three potential ways Defendant Hodge could be found liable for the apparent wrongful imposition of probation conditions upon Plaintiff: (1) Defendant Hodge himself could be found to have imposed the conditions of probation; (2) Defendant Hodge could have been made aware that Plaintiff was wrongfully subjected to probation conditions and did not attempt to correct the situation or (3) Defendant Hodge might be liable for simply enforcing wrongfully imposed conditions of probation.

### a.  Did Defendant Hodge impose the conditions of probation?

Defendant Hodge's testified in an affidavit filed in support of the Motion for Summary Judgment that he did not prepare the standard form setting forth Plaintiff's probation conditions and he "did not sign Robert Rose up to any probation conditions . . . " (Document 72-Affidavit of John Hodge, dated December 23, 2005, ¶¶ 3, 4).  However, on May 23, 2001, Defendant Hodge filed an Affidavit in Support of the Petition for Revocation of Order Suspending Sentence.  (Document 89-Voluminous Exhibit 8).  In this Affidavit, Defendant Hodge testified that he investigated

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 15

the facts found in the attached Report of Violation and they were true and accurate.  The third paragraph of the Report of Violation states that on November 13, 2000, Plaintiff "was signed to the rules and conditions of probation by Probation & Parole Office John T. Hodge." (Id.)

The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior sworn testimony. See Kennedy v. Allied Mutual Insurance Co., 952 F.2d 262 (9th Cir. 1991)(citing Foster v. Arcata Associates, 772 F.2d 1453, 1462 (9th Cir. 1985), cert. denied, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986); Radobenko v. Automated Equipment Corp., 520 F.2d 540, 543-44 (9th Cir. 1975)).  However, before disregarding a party's sworn testimony, the Court must make a factual determination that the contradiction was actually a "sham."  If so, the Court may disregard the contradictory testimony.  If the Court finds to the contrary, i.e., that the actions were the result of an honest discrepancy, a mistake, or the result of newly discovered evidence, then it may consider the testimony. Kennedy, 952 F.2d at 267 (9th Cir. 1991).

Defendants attempted to explain the apparent contradiction in the testimony of Defendant Hodge by stating that Hodge's 2001 report "mistakenly" stated that Plaintiff was signed to the conditions of probation by Defendant Hodge.  However, that is a statement made by counsel in Defendants' Statement of Material

Facts without evidentiary support.  There is no explanation from Defendant Hodge in his affidavit about this discrepancy.

While the Court cannot rely on counsel's statement that the 2001 affidavit statement was a mistake, given the undisputed testimony in support of Defendant Hodge's current affidavit, the Court is convinced that Defendant Hodge's statement that he did not personally "impose" any probation conditions upon Plaintiff is not a sham.

The evidence presented clearly establishes that Tracy Greenwood and Ted Bury prepared the standard form prior to Plaintiff's release from custody.  (Document 89-2:  Plaintiff's Affidavit, ¶ 8-13; Document 89-Voluminous Exhibit 12-Plaintiff's Deposition, pp. 93-103).  Further, there is no dispute that Jo Beth Vines took it upon herself to initial "special" condition numbers 1-4 on Plaintiff's probation conditions form pending Plaintiff's November 13, 2000 meeting with Mr. Hodge.  (Document 70-Declaration of Jo Beth Vines).

Accordingly, it is this Court's finding that Defendant Hodge did not personally impose probation conditions on Plaintiff.

> **b.   Was Hodge aware of the improperly imposed conditions?**

There might be an issue regarding Defendant Hodge's liability if he was aware that Plaintiff should not have been subjected to probation conditions. See Alexander v. Perrill, 916

F.2d 1392, 1398 (9th Cir. 1990) (holding that prison officials cannot "stand by idly after an inmate has raised the prospect that he is being unlawfully incarcerated and has provided documentary evidence in support of his claim").  However, the only evidence that Defendant Hodge was made aware of this problem comes from Plaintiff's deposition testimony.  Unlike, Defendnat Hodge's affidavit testimony, the Court finds that Plaintiff's deposition testimony is a sham and therefore the Court will disregard that testimony.

At the August 2001 revocation hearing Plaintiff testified under oath and in front of a state district court judge that he did not tell Defendant Hodge that he should not be under probationary supervision.  He explained at that hearing that his attorney advised him to wait until she had gathered the case law on the issue.  Plaintiff testified at this hearing that the only issue he brought up with Defendant Hodge was some restitution case law. (Document 75-Voluminous Exhibit J).

Similarly, in his affidavit presented in support of his opposition to Defendants' Motion, Plaintiff stated that Hodge threatened him with imprisonment if he did not comply with Hodge's order.  Plaintiff testified that he felt that contesting Hodge's authority would result in him going to prison so, "rather than suffering confinement for questioning Hodge's authority over him, [Plaintiff] decided to take action by consulting with an

Attorney about the issue with the purpose of filing court
action." (Document 89-2: Plaintiff's Affidavit, ¶¶ 17-21).
Nowhere in Plaintiff's affidavit is there any indication that
Plaintiff disputed that he should not be subject to these
probation conditions with Defendant Hodge or Strubeck.

It was only in Plaintiff's August 2005 deposition that he
testified he disputed the probation conditions with Defendant
Hodge and showed Defendant Hodge his sentencing papers.
(Document 89-Voluminous Exhibit 12-Plaintiff's Deposition, pp.
128-129).[4]  Plaintiff has given no explanation for the
discrepancy in his various sworn testimonies.

In contrast, Defendant Hodge testified at the revocation
hearing that Plaintiff did not dispute that he was supposed to be
on probation conditions with him.  (Document 75-1-Voluminous
Exhibit J-Transcript of August 24, 2001 Revocation Hearing, p.
96).

Therefore, the weight of the testimony presented by the
parties leads only to the conclusion that Plaintiff did not
dispute the probation conditions with Defendant Hodge.  Thus,
there is no evidence that Defendant Hodge had reason to believe
that Plaintiff was improperly placed under probation conditions.

---

[4]  Plaintiff did not discuss the fact that he was not
supposed to be under conditions of probation with Defendant
Strubeck. (Id. at 138).

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 19

            c.   Is there liability for supervising Plaintiff
                 on the improper probation conditions?

     Plaintiff contends that it was Defendant Hodge's duty as his
supervising officer to oversee the preparation of the standard
form and any failure to do so was a violation of Plaintiff's
constitutional rights.[5]

     Montana statutory law requires that the supervision of a
probationer must be in accordance with the conditions set by the
sentencing judge.  Even if Defendant Hodge did not personally
impose the improper conditions of probation and even if Plaintiff
did not dispute the conditions, Hodge, as the primary supervising
officer, had an obligation to only supervise in accordance with
the sentencing court's conditions.  Mont. Code Ann. § 46-23-
1011(1).  Hodge did not verify these conditions and it appears
that under state statute he may have had an obligation to do so.
Certainly the better practice, as the supervising officer would
have been to verify those conditions.  It is very likely
(although there is no evidence in the record) that there was a
copy of Plaintiff's sentencing order in Mr. Hodge's file on
Plaintiff.  Mr. Hodge certainly appeared familiar with the
sentencing order as evidenced by his reports of violations and
affidavit in support of revocation.  Since Mr. Hodge was required

_____

     [5]This is especially a concern in this case given Plaintiff's
allegation that his initials were forged on the special
conditions on the standard form.

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 20

to supervise in accordance with the sentencing order, and since
he had access to that order and was familiar with that order, it
would appear that he should have verified the conditions of
probation even if imposed by other officers.

However, there is no evidence that Hodge's failure to verify
these conditions was done with deliberate indifference to
Plaintiff's constitutional rights.  The United States Supreme
Court has found that "The defendant's state of mind is . . .
relevant to a § 1983 claim for substantive due process
violations.  The Supreme Court has stated that negligent conduct
does not give rise to § 1983 liability for resulting unintended
loss of or injury to life, liberty, or property. Davidson v.
Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986);
Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 677, 88 L.Ed.2d
662 (1986).

"[D]eliberate indifference entails something more than mere
negligence, . . . [but] is satisfied by something less than acts
or omissions for the very purposes of causing harm or with
knowledge that harm will result." Farmer v. Brennan, 511 U.S.
825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Having found
that Mr. Hodge did not personally impose the conditions of
probation and Plaintiff did not advise him of the problem,
Defendant Hodge's failure to verify the conditions of probation
was at most negligence.  This negligence is insufficient to

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 21

impose liability on Defendant Hodge for the denial of Plaintiff's constitutional rights.

### B. Malicious Prosecution - State and Federal Violations

Summary judgment for Defendants should be granted on Plaintiff's state and federal malicious prosecution claims because the Plaintiff does not offer sufficient material facts to support the necessary requirements of proving the claims.  To establish a federal claim for malicious prosecution Plaintiff must show that Defendants prosecuted him with malicious intent, without probable cause, and with the purpose of denying him a specific constitutional right.  See Awaby v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004).  Similarly, the state standard for malicious prosecution calls for the defendant to play a role in the prosecution of plaintiff and do so maliciously and with want of probable cause, inter alia.  Plouffe v. Mont. Dep't of Pub. Health & Human Servs., 309 Mont. 184, 190 (2002).

Plaintiff is unable to prove the malicious prosecution claims as the facts do not show Defendants and the prosecutor, Tom Scott, acted in concert to prosecute.  Where a claim of malicious prosecution stems from an "independent determination on the part of the prosecutor . . . those who participated in the investigation or filed a report that resulted in the initiation of proceedings" are usually precluded from liability.  Awabdy, 368 F.3d at 1066.

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 22

Plaintiff alleges that Defendants provided falsified information on the Reports of Violation and Scott knowingly relied upon these to initiate prosecution.  These are mere allegations and Plaintiff does not offer facts to support them, resultantly they are subsumed by Mr. Scott's December 13, 2005 Affidavit.  In this affidavit, Scott states he "made an independent determination to initiate and pursue Mr. Rose's revocation proceedings" by looking at the original judgment and the reports of violation, and that he was not misled or pressured by Defendant Hodge. (Document 73-Scott Affidavit, ¶ 5).

Additionally, the information from Hodge's Report of Violation that Scott claims he relied upon to establish probable cause consists of facts that Plaintiff has neither denied nor contradicted.  The undisputed evidence is the Mr. Scott acted independent of Defendants' influence, which leaves Defendants free from liability for malicious prosecution.  Therefore, summary judgment should be granted on both the state and federal malicious prosecution claims.

### C.  Deprivation of Due Process

Plaintiff's Complaint alleges that he was given no opportunity for a pre-deprivation process in relation to his probation violation and arrest. (Document 8-Attachment Five, Claim 9).  Defendants contend that Plaintiff was only entitled to a revocation hearing initiated by a revocation petition and

supporting affidavit. (Document 74, p. 14, citing <u>State v. Swan</u>, 220 Mont. 162, 167 (1986)).

Under federal case law, the minimum due process requirements for revoking probation include: (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. <u>Morrissey</u>, 408 U.S. at 489, 482, 485-89, 92 S.Ct. at 2604, 33 L.Ed.2d at 499; <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 786 93 S.Ct. 1756, 1761-1762, 36 L.Ed.2d at 664 (1973) (extending these requirements to probation revocations).

Specifically this means a probationer should receive a "preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other somewhat more comprehensive hearing prior to the making of the final revocation decision." <u>Gagnon</u>, 411 U.S. at 782. The importance of the preliminary hearing is to preserve a probationer's liberty to "be

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 24

gainfully employed . . . free to be with family and friends and

to form the other enduring attachments of normal life."

Morrissey, 408 U.S. at 482.  This liberty is violated when a

probationer is held in custody for an unreasonable amount of time

for allegedly violating conditions of probation without having

the opportunity to show otherwise.

The Montana Supreme Court in Swan found that,

Montana's system for dealing with probation violations
is set forth in §§ 46-23-1012 and -1013, MCA.  A
defendant is taken into custody when a court issues a
warrant for the arrest of the defendant for violation
of conditions of probation.  A warrantless arrest can
occur only when the defendant is given a written
statement about the circumstances of the violation.
After the defendant has been detained, he is brought
before the court "without unnecessary delay for a
hearing on the violation charged." Section 46-23-
1013(1), MCA.  No two-stage hearing process is
necessary under this system because the reasons for
having a preliminary hearing are absent.  The
revocation hearing is held promptly, before a defendant
is returned to prison.  The defendant receives notice
of the hearing and of the alleged violations.  Finally,
the hearing is held before a judge, rather than an
administrative body, providing additional protection
for the defendant.  There is no question here that the
revocation hearing satisfies the requirements of
Morrissey and Gagnon.

Swan, 220 Mont. at 166.

In this case, there is no dispute that a final revocation

hearing took place on August 24, 2001.  The question is whether

there was a timely preliminary hearing.

From what the Court can ascertain from Plaintiff's

deposition, it appears that he was arrested without warrant on

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 25

May 19, 2001 and held for five or six days before bail was set
and he was able to secure his release on bond. (Document
89-Voluminous Exhibit 12-Plaintiff's Deposition, pp. 152).
Plaintiff was then arrested in Helena on July 14, 2001 and was
not able to bond out of jail until September 1, 2001.  (Document
89-Voluminous Exhibit 12-Plaintiff's Deposition, pp. 182-184).

   Plaintiff contends he was denied a preliminary hearing with
regard to both of these arrests.  Defendants do not assert that
Plaintiff received any hearing on the probation arrests until the
August 24, 2001 hearing.  Instead, Defendants contend that
Plaintiff was not entitled to a preliminary probable cause
hearing under state law, that Plaintiff did not assert a right to
any additional process and he suffered no prejudice as a result
of the time which elapsed between his May 19 and July 14, 2001
arrests and his August 24, 2001 revocation hearing.

   Plaintiff was entitled to a prompt preliminary hearing
(whether it be a preliminary hearing or the actual revocation
hearing) under both state and federal law.  Montana law at the
time of Plaintiff's arrest required that:

> Upon such arrest and detention, the probation and
> parole officer shall immediately notify the court with
> jurisdiction over such prisoner and shall submit in
> writing a report showing in what manner the defendant
> has violated the conditions of release. Thereupon, or
> upon an arrest by warrant as herein provided, the court
> shall cause the defendant to be brought before it
> without unnecessary delay for a hearing on the
> violation charged. The hearing may be informal or

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 26

summary.

Mont. Code Ann. § 46-23-1013(1) (1999).  Similarly, federal "due process would seem to require that some minimal inquiry be conducted  . . .  as promptly as convenient after arrest." Morrissey, 408 U.S. at 485, 92 S.Ct. 2593.

Based upon this record, it appears that Plaintiff (at least with regard to the second arrest) sat in jail for approximately 50 days without any hearing on the charged violations.  Although neither state nor federal law required a hearing within a specific time period, both required some type of prompt preliminary hearing.  Plaintiff appears to have been denied a prompt hearing.

Defendants suggestion that Plaintiff suffered no prejudice as a result of the time which elapsed between his May 19 and July 14, 2001 arrests and his August 24, 2001 revocation hearing is unpersuasive.  For at least 55 days, Plaintiff was illegally incarcerated.  That alone is sufficient to show prejudice given that Plaintiff succeeded in his efforts to dismiss the revocation motion.  Further, Plaintiff testified that he lost work during this period of time.  There has been a sufficient showing that Plaintiff was prejudiced.

However, there is no evidence that it was Defendants' obligation to schedule the prompt hearing.  Under the Montana statute, Defendants were required to "immediately notify the

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 27

court with jurisdiction over such prisoner and shall submit in writing a report showing in what manner the defendant has violated the conditions of release." Mont. Code Ann. § 46-23-1013(1) (1999). Thereafter, it was the court's obligation to "cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged." Id.

Defendant Hodge appears to have complied with his obligation under the statute by filing a report of violation on May 23, 2001 and by filing on July 27, 2001 an Addendum to the May 23, 2001 Report of Violation. (Document 75-1--Voluminous Exhibit C-Deposition Exhibits 16 and 17). Accordingly, Defendants fulfilled their obligation under the state statute and are not liable for any alleged due process violation which may have occurred.

**D. Defamation**

Plaintiff's defamation claim arises from the fact that his May 19, 2000 arrest for possession of illegal drugs was published in the local newspaper. (Document 8-Complaint, attachment two). Under Montana law, libel (written defamation) is defined as,

> a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation.

Mont. Code Ann. § 27-1-802.

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 28

Plaintiff has no evidence that either Defendant Hodge or Defendant Strubeck had anything to do with the publication of this article, but he thinks there is an inference that they did since the charges arose out of Beaverhead County and the article appeared in the Ravalli County paper.  (Document 89-Voluminous Exhibit 12-Plaintiff's Deposition, pp. 202-209).  This inference is insufficient to overcome Defendants' motion.  Further, Defendants are correct that the publication of the fact of an arrest or of a charge of a crime is privileged.  <u>Sacco v. High Country Indep. Press</u>, 271 Mont. 209, 240-41 (1995).  Finally, if the only thing published in the newspaper was that Plaintiff had been arrested that is a true statement and is therefore not defamatory.

Plaintiff has failed to meet his burden on this cause of action and summary judgment should be granted.

**E. Intentional Infliction of Emotional Distress**

The motion for summary judgment should also be granted in regard to the claim of intentional infliction of emotional distress because it appears the Plaintiff no longer intends to pursue it and has not provided genuine issues of material fact in support of the claim.  In his deposition, Plaintiff states he intends to drop the intentional infliction of emotional distress claim and replace it with an "infliction of emotional distress claim."  (Document 89-Voluminous Exhibit 12-Plaintiff's

Deposition, p. 220: 4-20).  Given the omission of any mention of intentional infliction of emotional distress in either Plaintiff's reply brief to the motion for summary judgment or the statement of genuine issues it appears that Plaintiff has chosen not to pursue this claim.

Even if Plaintiff intended to maintain he suffered intentional infliction of emotional distress he has not supplied the Court with sufficient facts to establish "serious or severe emotional distress."  See Sacco, 271 Mont. at 232.  In failing to present even the slightest evidence that his mental state changed as a result of this incident Plaintiff cannot establish the most basic requirement of the test.  For these reasons, Plaintiff's state law claim for intentional infliction of emotional distress should be dismissed.

Based upon the foregoing, the Court enters the following:

**ORDER**

Plaintiff's Motion to Strike Affidavits and Parts of Defendants' Argument (Document 88) is **DENIED.**

Further, the Court enters the following:

**RECOMMENDATION**

Defendants' Motion for Summary Judgment (Document 74) should be **GRANTED** in full and Plaintiff's Complaint should be **DISMISSED WITH PREJUDICE.**

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 30

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND
CONSEQUENCES OF FAILURE TO OBJECT**

The Clerk of Court shall serve a copy of this Findings and
Recommendation of the United States Magistrate Judge upon the
parties.  The parties are advised that pursuant to 28 U.S.C. §
636(b)(1), they have the right to file written objections to this
Findings and Recommendation.  Any objections to the Findings and
Recommendation must be filed with the Clerk of Court within
fifteen (15) days after the signing of this recommendation, or
objection is waived.

**PLAINTIFF IS CAUTIONED THAT HE MUST KEEP THE COURT ADVISED
OF ANY CHANGE OF ADDRESS AND A FAILURE TO DO SO COULD RESULT IN A
RECOMMENDATION OF DISMISSAL OF THIS CAUSE OF ACTION.**

DATED this 28th day of August, 2006.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

ORDER AND FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 31